IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT WILLIAM BONDURANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO.  2:04CV774-WHA |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

RECOMMENDATION OF THE MAGISTRATE JUDGE

In 2001, the plaintiff was convicted in this court of uttering counterfeit obligation of the United States in violation of 18 U.S.C. § 471.[1]  He was sentenced to 46 months imprisonment.  During pretrial proceedings and during his trial Bondurant was incarcerated, and he was transported to and from the courthouse by deputy United States Marshals.  Bondurant complains as follows:

> [S]everal Marshalls (sic) did knowingly and intentionally place leg irons on Plaintiff, with full knowledge that Plaintiff's legs were swollen with endema (sic) . . . Wherein Plaintiff did suffer permanent injury to his right lower leg and ankle, directly from TORTURE from the use of LEG IRONS — which caused the skin to rip away and resulted in a life threatening infection that was only overcome by Levoqiun. (sic) The most powerful of antibiotics.  Wherein the pain and suffering was alleviated only by heavy narcotics such a Oxicoton. (sic) That this TORTURE transpired on three occasions.  Two of which were after both the Warden of the jail and the resident Doctor had made formal complaints to the Chief U.S. Marshal.

Pl's Compl. at 1.

---

[1] *United States v. Bondurant*, 2:00-cr-114-MHT.

Bondurant seeks damages in this case brought pursuant to the Federal Tort Claims Act, §§28 U.S.C. 2671 et seq. ("FTCA") To the complaint, the United States responded with a motion to dismiss on jurisdictional grounds arguing that discretionary function exception to the FTCA protects the government from suits of this nature. The United States is correct, and this case must be dismissed because the court lacks jurisdiction.

The liability of the United States under the FTCA is subject to the various exceptions contained in § 2680, including the "discretionary function" exception at issue here. That exception provides that the Government is not liable for

> "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

28 U.S.C. § 2680(a).

The exception covers only acts that are discretionary in nature, acts that "involv[e] an element of judgment or choice," *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "[I]t is the nature of the conduct, rather than the status of the actor" that governs whether the exception applies. *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984). In order for a claim to fall within the discretionary function exception of the FTCA, it must meet two requirements: (1) the challenged decision must involve an element of choice, and (2) the governmental decision must implicate an exercise of judgment grounded on considerations of public policy. *United States v. Gaubert*, 499 U.S. 315, 322 (1991). As

to the first inquiry, "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," and "the employee has no rightful option but to adhere to the directive," the conduct does not involve an element of choice and therefore is not discretionary. *Gaubert*, 449 U.S. at 322, 111 S.Ct. at 1273 (internal marks omitted); *Enlow v. United States*  161 Fed.Appx. 837, *839, 2006 WL 10921, **1 (11th Cir. 2006).  However, "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *Gaubert*, 499 U.S. at 324.  *See also Varig,* 467 U.S. at 820 (Actions of agency employees in furtherance of agency directives are shielded from tort liability when the agency directive stems from a discretionary function).

Congress has established that "the primary role and mission of the United States Marshals Service" is "to provide for the security ... of the United States District Courts." 28 U.S.C. § 566(a).  United States Marshals are officers of the Department of Justice. 28 C.F.R. § 0.5(a).[2] They are appointed by the President, with the advice and consent of the Senate, and are placed by statute under the supervision and direction of the Attorney General. 28 U.S.C. §§ 561(a), 569(c). The Attorney General oversees the activities of the marshals through the United States Marshals Service, a bureau of the Department of

---

[2] The regulation provides that the "Attorney General shall: (a) Supervise and direct the administration and operation of the Department of Justice, including the offices of U.S. Attorneys and U.S. Marshals, which are within the Department of Justice."

Justice. 28 C.F.R. § 0.1. Marshals are vested by statute and regulation with a variety of responsibilities, all of which involve the execution and enforcement of federal law. They are responsible for ensuring federal courtroom security, executing various aspects of the federal witness protection program, and providing security to government witnesses and their families who are under threat of violence because of their testimony. 28 C.F.R. § 0.111(c). Pertinent here is the Marshal's various responsibilities for the detention and transportation of federal prisoners.

> (j) Receipt, processing and transportation of prisoners held in the custody of a marshal or transported by the U.S. Marshals Service under cooperative or intergovernmental agreements.
>
> (k) Sustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence, otherwise released from custody by the court, or returned to the custody of the U.S. Parole Commission or the Bureau of Prisons.

*Id*. § 0.111(j)-(k).

Pursuant to statutory authority, 28 U.S.C. § 561, the Director of the U.S. Marshal Service promulgated a policy directive[3] establishing policies and procedures for the use of restraining devices. Leg irons are specifically authorized. (Policy Directive No. 99-28, III.A.) The Policy Directive requires that prisoners who are "moved between the cellblock and court, or in any other short move" be either fully restrained or be restrained

---

[3]A redacted copy of this regulation is attached to the Def.'s Special Report. (doc. # 16)

in an alternative manner.[4] (Policy Directive No. 99-28, IV.C.1.) Thus, the policy on its face gives discretion to personnel about how to restrain prisoners.

Acting under his authority, the United States Marshal for the Middle District of Alabama adopted in June 2001, a policy which requires that federal pretrial detainees be transported in leg irons, handcuffs and a waist chain when being moved to and from the courthouse. (Harding Aff., doc. # 16-2 at 3) Deputy U.S. Marshals transporting Bondurant complied with this policy and applied leg irons to him. (*Id.* at 4).

Bondurant contends that his injuries are redressable under the Federal Tort Claims Act because the policy directive provides alternative means of securing a prisoner and the failure of the deputy marshals to observe the need to treat him differently amounts to actionable negligence because the deputy marshals failed to exercise due care. Unfortunately for Bondurant, this argument is quite beside the point as the court will explain.

First, the court must determine if the security measures employed by the Marshal were within his discretionary authority. A governmental action is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The evidence before the court shows that the Marshal has considerable discretion about how to secure prisoners when moving them. In addition, the court takes notice that "[p]rison

---

[4]The alternative manner is spelled out in the policy but is redacted here for security reasons.

administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (*quoting Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). No federal statute, regulation, or policy specifies the precise steps the Marshal must take to secure the safety of a prisoner, the court concludes that his establishing a policy which governed the use of leg irons to secure Bondurant was discretionary.[5]

Next, the court must determine whether the challenged decisions were based on social, economic, or public policy, *Gaubert*, 499 U.S. at 322, because the discretionary function exception operates to protect "governmental actions and decisions based on considerations of public policy." *Id.* at 324-25. In making this determination, the court does not consider that subjective intent of the government employee or whether the employee actually weighed social, economic and political considerations. *Varig* at 814. Rather, the court looks to "the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert* at 325.

As noted above, Congress determined that the primary mission of the United States Marshal Service is to provide security for the federal courts. Security for the courts is necessary for them to carry out their primary mission of dispute resolution arising in cases

---

[5]To the extent that Deputy Marshals complied with that policy, Bondurant cannot complain. "[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *United States v. Gaubert*, 499 U.S. 315, 324 (1991).

and controversies.  U.S. CONST. art. III, § 2.  Sometimes, however, security concerns and the manner in which courts must carry out their mission come into conflict.  *See e.g. Deck v. Missouri*, 544 U.S. 622 (2005) (Due process prohibits routine use of visible physical restraints during trial).  Determination of how to provide necessary security without interfering with the court's primary mission involves "judgment as to which range of permissible courses is the wisest." *Gaubert* at 325.  Thus, the challenged actions are plainly ones "susceptible to policy analysis." *Id.*

In short, because the alleged negligent conduct falls within the discretionary function exception to the FTCA, the court lacks subject matter jurisdiction and this case must be dismissed with prejudice.  Accordingly, it is the RECOMMENDATION of the Magistrate Judge that this case be dismissed with prejudice for want of jurisdiction.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before September 20, 2006**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the

District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

    Done this 7th day of September, 2006.

                                            /s/Charles S. Coody
                                            CHARLES S. COODY
                                            CHIEF UNITED STATES MAGISTRATE JUDGE